# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| FIAR INC. dba Rite Shop Food Mart ) <br> c/o Raif Ahmad, Statutory Agent ) <br> 3153 W. 73rd St. ) <br> Cleveland, Ohio 44102 ) <br> ) <br> and ) <br> ) <br> RAIF AHMAD ) <br> 3153 W. 73rd St. ) <br> Cleveland, Ohio 44102, ) <br> ) <br>       Plaintiffs, ) <br> ) <br>   v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> c/o Michelle Baeppler ) <br> First Assistant U.S. Attorney ) <br> Northern District of Ohio ) <br> 801 W. Superior Ave., Suite 400 ) <br> Cleveland Ohio 44113-1852 ) <br> ) <br> c/o Merrick Garland ) <br> Attorney General ) <br> U.S. Department of Justice ) <br> 950 Pennsylvania Avenue, NW ) <br> Washington, DC 20530-0001 ) <br> ) <br> c/o Lorie L. Conneen ) <br> Administrative Review Officer ) <br> U.S. Department of Agriculture ) <br> 1320 Braddock Place, Room 5042 ) <br> Alexandria, Virginia 22314-1649 ) <br> ) <br>       Defendant. ) | Case No. <br><br> Judge <br><br> **COMPLAINT FOR A TRIAL *DE NOVO* AND REVIEW OF AGENCY FINAL DECISION** |

Plaintiffs FIAR, Inc. (the "Store") and Raif Ahmad ("Ahmad," and jointly with the Store, "Plaintiffs") for their complaint allege as follows:

## INTRODUCTION

1. This is an action seeking (a) judicial review of an order (the "Order") imposed by the Food and Nutrition Services ("FNS") disqualifying Plaintiffs from participating in the Supplemental Nutrition Assistance Program ("SNAP") based on alleged violations of regulations prohibiting trafficking of SNAP benefits and (b) a trial *de novo* of this final agency decision by the United States Department of Agriculture. (*See* Ex. A, Final Agency Decision).

2. This Court has jurisdiction under 7 U.S.C. § 2023(a)(13).

3. The Store, which is the subject of the Order, is located in the County of Cuyahoga, Ohio, which is within the jurisdiction of this Court.

4. This Court is empowered to review the Order under 7 U.S.C. § 2023.

## THE PARTIES

5. The Store is a grocery store with a principal place of business in Cuyahoga County, Ohio.

6. Ahmad is an individual who resides in Cuyahoga County, Ohio. He owns the Store.

7. Defendant United States of America (the "Defendant") is formed, maintains, and controls the United States Department of Agriculture ("USDA" or "Department" or "Agency"), of which FNS is a subsidiary. FNS administers the Supplemental Nutrition Assistance Program (SNAP) program by, in part, issuing Electronic Benefits Transfer (EBT) cards to eligible users who purchase eligible food items from retailers that the FNS authorizes as qualified SNAP participants. The retailer is reimbursed for each eligible EBT purchase.

## BACKGROUND

8. At all relevant times, the Store was an authorized participant in the Supplemental Nutrition and Assistance Program, administered by FNS.

9. After allegedly conducting an investigation of Plaintiffs, FNS on December 17, 2021 levied charges against the Store relating to the alleged trafficking of SNAP benefits as demonstrated through allegedly irregular SNAP transaction data. (*See* Ex. A, Final Agency Decision at 1).

10. These initial charges were bereft of specific allegations or affidavits indicating that a witness had actually seen the store or its personnel traffic. Instead, the charging letter set forth two categories of transactions which FNS believes to indicate the existence of trafficking: (a) repeat transactions by same household; and (b) large purchase transactions.

11. Between December 23, 2021 and January 21, 2022, Plaintiffs responded to FNS's allegations. They explained that the questioned transactions were largely a result of SNAP participant shopping behavior in the Store. And they supported their contentions with documentary evidence. Plaintiffs further sought leniency and explained that Plaintiffs did not commit any of the alleged violations of SNAP, and furthermore, that they had never violated these regulations.

12. FNS, however, ignored Plaintiffs' responses. It, in a letter dated March 1, 2022, permanently disqualified the Store from participating in SNAP.

13. Plaintiffs requested administrative review of the Agency's decision on March 8, 2022, and they requested an extension of time to file supporting information. See 7 C.F.R. § 279.3(b). FNS granted this extension, and Plaintiffs timely filed their request for administrative review along with supporting documentation on April 7, 2022.

14. The Agency, however, upheld the permanent disqualification of the Store in its final decision. (*See* Ex. A). Plaintiffs received a copy of this decision on July 25, 2022.

15. A large portion of Plaintiffs' business involves SNAP, and the loss of revenue from their disqualification has been deleterious to Plaintiffs' business.

16. The government, through 7 C.F.R. § 278.6, may disqualify or suspend retailers who violate SNAP regulations.

17. Here, the Agency charged Plaintiffs with trafficking in SNAP benefits. The SNAP regulations define "trafficking" as meaning: (1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone; (2) The exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for SNAP benefits; (3) Purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount; (4) Purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; (5) Intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or (6) Attempting to buy, sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification

numbers (PINs), or by manual voucher and signatures, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone. 7 C.F.R. § 271.2. Stated plainly, the trafficking regulation prohibits "the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food." *Burch v. USDA*, 174 F. App'x 328, 332 (6th Cir. 2006) (quotations omitted). Thus, "[t]o establish that a store violated the regulations of the [food stamp program], FNS must provide administrative records that show that the authorized food store accepted food stamp coupons as payment for ineligible items." *Young Choi, Inc. v. United States*, 639 F. Supp. 2d 1169, 1172 (D. Haw. 2009) (citing *Wehab v. Yeutter*, 743 F. Supp. 1353, 1357 (N.D. Cal. 1990)).

18. Plaintiffs did not engage in trafficking.

19. The Agency had little evidence to the contrary. It did not conduct any undercover investigation and had no direct evidence that Plaintiffs engaged in trafficking as defined by the regulations. Instead, it relied solely on EBT transaction reports—circumstantial data. But this data—standing alone—did not justify a finding of trafficking and permanent disqualification.

20. Further, under 7 C.F.R. § 278.6(d), FNS, in determining the appropriate penalty, must consider (1) The nature and scope of the violations committed by personnel of the firm, (2) Any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and (3) Any other evidence that shows the firm's intent to violate the regulations.

21. Plaintiffs have never been warned and never before been sanctioned for violation of SNAP laws or regulations. Plaintiff has never been denied SNAP payments or reimbursement based on any SNAP program violation.

22. Plaintiffs are not aware, nor have they ever been notified or warned, of any irregularities in their compliance with SNAP laws or regulations that might warrant the Store being targeted for a surreptitious investigation of its compliance.

23. At no time between the Store's inception and the date of the disqualification decision did the FNS Regional Office consider issuing a warning letter as required by 7 C.F.R. § 278.6(d)(2).

24. The Final Agency Decision did not find that the Regional Office complied with 7 C.F.R. § 278.6(d)(2) by considering prior efforts to warn Plaintiffs, or any of the other factors enumerated at § 278.6(d).

25. FNS made no specific findings as to carelessness or lack of supervision by Plaintiffs, nor did it make a finding with respect to other evidence demonstrating intent by the Store to violate SNAP regulations.

26. FNS did not find that the Plaintiffs personally participated in any alleged unlawful SNAP transactions.

27. Permanent disqualification of the Store would also likely harm the community because it is an integral part of the community shopping environment.

28. Plaintiffs have exhausted their administrative remedies, are entitled to a judicial trial *de novo* of the administrative action and reversal of the finding of a SNAP violation and the disqualification of the Store from SNAP participation.

### COUNT I
### (For Judicial Review of the Order and Trial *De Novo*)

29. Plaintiffs incorporate by reference the allegations of all preceding paragraphs as though fully set forth in this Count I.

30. A plaintiff challenging a final decision by the Agency is entitled to a trial *de novo* a court to "determine the validity of the questioned administrative action" as well as a trial *de novo* of whether the FNS followed the Act and regulations in failing to credit Plaintiffs' assertion that trafficking did not occur, as well as whether the violation resulted from carelessness or poor supervision, whether the Agency considered any prior warnings to the Store, and whether FNS decision to impose said penalty was arbitrary and capricious. *See* 7 U.S.C. § 2023.

31. FNS violated its own regulations, 7 C.F.R. § 278.6(d)(2)-(3), which imposes a mandatory requirement that the FNS Regional Office making a disqualification or penalty determination consider prior action taken by FNS to warn the retailer about the possibility violations are occurring. FNS never considered this prior action.

32. Pursuant to 7 C.F.R. §§ 2023(13) and 2023(15), Plaintiffs are entitled to a trial *de novo* on whether they violated a provision of the statute or a regulation under the statute, including trial *de novo* of whether the FNS followed the statute and regulations in finding the violation occurred as alleged.

33. Plaintiffs have been aggrieved by the determination of the Agency and state that the Agency's findings are unsupported by reliable probative evidence and are otherwise the product of unlawful agency action.

34. As such, the Order should be vacated.

35. Even if a trial *de novo* is not awarded, the penalty imposed was arbitrary and capricious.

36. The Regulatory Flexibility Act, 5 U.S.C. § 601-612, requires agencies to analyze the impact of rulemaking on small entities, such as the Store, and consider alternatives that would minimize any significant impacts on a substantial number of small entities.

37. The Agency failed to do so here, and instead imposed the most drastic penalty available: permanent disqualification.

38. Plaintiffs respectfully request that the Court vacate the Final Agency Decision and immediately reinstate the Plaintiff as a SNAP participant, because (a) FNS violated its own regulations and thus cannot impose any sanction; (b) FNS has acted arbitrarily and capriciously and violated its own regulations in imposing a penalty of permanent disqualification; and (c) The permanent disqualification will cause hardship to SNAP recipients in the area surrounding the plaintiffs' store.

39. Alternatively, the Court should either: find no sanction appropriate, but direct issuance of a written warning; or reduce the disqualification to a reasonable civil money penalty.

40. No prior relief has been requested.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court grant the following relief:

A. *De novo* review of the Order and vacatur of it;

B. Vacatur of the Order as FNS has acted arbitrarily and capriciously and violated its own regulations in imposing a penalty of permanent disqualification without properly considering all statutory factors and by failing to accept Plaintiffs' assertion that they did not engage in trafficking;

C. Order Defendants to reimburse Plaintiffs for all costs and fees associated with the commencement and prosecution of this lawsuit; and

D. Any other relief the Court deems just and proper.

Dated: August 24, 2022                    Respectfully submitted,

                                          */s/ Nicholas R. Oleski*
                                          Charles A. Nemer (009261)
                                          Nicholas R. Oleski (0095808)
                                          MCCARTHY, LEBIT, CRYSTAL
                                           & LIFFMAN CO., LPA
                                          1111 Superior Avenue East
                                          Suite 2700
                                          Cleveland, Ohio 44114
                                          Phone: (216) 696-1422
                                          Email: can@mccarthylebit.com
                                                  nro@mccarthylebit.com

                                          *Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs request a jury trial on all questions of fact raised by their complaint.

                                          */s/ Nicholas R. Oleski*
                                          Nicholas R. Oleski (0095808)